## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **SQUARE ONE PREP, INC.** | ) | |
| | ) | No. __ CV ____ |
| Plaintiffs, | ) | |
| | ) | **COMPLAINT FOR BREACH OF** |
| **v.** | ) | **CONTRACT AND** |
| | ) | **FRAUDULENT** |
| **MARTIN PEREZ** | ) | **INDUCEMENT** |
| | ) | |
| Defendant. | ) | **JURY TRIAL DEMANDED** |
| | ) | |

Plaintiff Square One Prep, Inc. alleges as follows:

### NATURE OF ACTION

1.      This is a civil action for breach of contract and willful and malicious fraudulent inducement in violation of the laws of the State of New York.

### THE PARTIES

2.      This action is brought by Plaintiff Square One Prep, Inc. ("Square One"), a corporation organized under the laws of the state of New York and registered to do business in the state of New York, with its principal place of business at 142 E 27th Street, New York, NY 10016.

3.      Square One brings this action against Defendant Martin Perez ("Perez"), who upon information and belief resides and has his principle place of business at 37515 Starcrest Street Palmdale, CA 93550.

4.     Square One seeks compensatory damages, liquidated damages, punitive damages, injunctive relief, pre-judgment interest, and reasonable attorneys' fees and costs as remedies for Defendant's breach of contract and willful and malicious fraudulent inducement.

## JURISDICTION AND VENUE

5.     This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a) (diversity) because Square One and Perez (collectively "the Parties") are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.

6.     Venue is proper in this district pursuant to the general venue statute, 28 U.S.C. § 1391 because Square One resides in this judicial district, a substantial part of the events leading to the lawsuit took place in this district, and the Parties contractually agreed to this venue.

7.     This Court may exercise personal jurisdiction over Perez because he transacted business within the state of New York — specifically with Square One — and this action arises out of that business. The Parties entered into an Independent Contractor Agreement ("Ind. Con. Agmt.") and an Employment Agreement ("Emp. Agmt.") (collectively "Agreements"), the terms of which are more fully set forth below. In both Agreements, the Parties stipulated that jurisdiction and venue for any claim arising out of the Agreements shall be made in the federal, state, or municipal courts in the State of New York, in the County of New York.

## GENERAL ALLEGATIONS

8.      Square One assists applicants to business school with the admissions process. It uses proprietary software as part of its business. It hired Nextware Technologies ("Nextware") to create the software in 2019.

9.      Square One's software is at the heart of its business. Square One has invested more than a million dollars and hundreds of hours developing it. The software contains an exhaustive library of resources for applicants to business school. It organizes data that is hard to find elsewhere, and includes data that simply isn't available elsewhere. It facilitates communications between Square One's clients and advisors. It also functions as a resource for advisors. It's the product of years of work by Square One. It gives Square One a significant competitive advantage in its field. And it's vital to Square One's operations.

10.      On February 24, 2022 Square One interviewed Perez to take over the job of maintaining and improving the company's proprietary software.

11.      On March 9, 2022 Square One sent Perez source code for its software so he could assess its complexity and if he was comfortable with its architecture.

12.      On March 18, 2022 Square One again interviewed Perez for the job. In that interview Perez said he had reviewed the source code and assured Square One it would take him at most 2-3 weeks to learn the system. He agreed that he could migrate the technology by mid-April and work on improvements to make sure Square One was ready for the admissions season beginning on June 1, 2022.

13.     On March 21, 2022, Perez signed the Ind. Con. Agmt. with Square One. A true

and correct copy of the Ind. Con. Agmt. is attached as Exhibit 1. *See* Exhibit 1.

14.     Under the terms of the Ind. Con. Agmt., Perez agreed to perform the services of

Technology Lead, as described in Exhibit A to the Ind. Con. Agmt., in exchange for the

compensation described in Exhibit B to the Ind. Con. Agmt. The agreed upon compensation was

$50 an hour. *See* Exhibit 1.

15.     In part III. B. of the Ind. Con. Agmt., Perez also committed to safeguard Square

One's Confidential Information, and to not disclose Confidential Information to any person or

entity. *See* Exhibit 1.

16.     In parts III. C. and D. of the Ind. Con. Agmt., Perez assigned ownership of all his

work product to Square One. *See* Exhibit 1.

17.     In part III. E. of the Ind. Con. Agmt., Perez agreed that he had no right to transfer

or retain any information, files, data, and/or e-mails from Square One's e-mail, Google drive,

databases, and/or other server accounts. *See* Exhibit 1.

18.     At no point did Perez disclose to Square One that he was not, in fact, doing the

work he agreed to do in the Ind. Con. Agmt. Instead, Perez secretly sent that work to one or more

third parties to perform.

19.     Square One later learned that on March 22, 2022 Perez entered into a separate,

secret agreement with Antonio Molina ("Molina") which Perez did not disclose to Square One.

Molina agreed to do all the services Perez had promised Square One he would do under the

Agreement. In exchange, Perez agreed to pay Molina $8 an hour, significantly less than the $50

per hour Square One had agreed to pay Perez in the Ind. Con. Agmt.

20.      Perez deliberately and repeatedly disclosed Confidential Information to Molina

and, on information and belief, other third parties, without informing or obtaining permission

from Square One. Perez communicated with Molina several times a day regarding the project

and gave Molina the sign in credentials Square One had given Perez. Molina therefore accessed

Confidential Information on a daily basis using sign in credentials Perez was not authorized to

give him.

21.      On March 21, 2022, Perez also signed the Emp. Agmt. with Square One, which

took effect on May 1, 2022. A true and correct copy of the Emp. Agmt. is attached as Exhibit 2.

*See* Exhibit 2.

22.      Under the terms of the Emp. Agmt., Perez agreed to perform the services of

Technology Lead, as described in Exhibit A to the Emp. Agmt., in exchange for the

compensation described in part I.B of the Emp. Agmt. *See* Exhibit 2. The agreed upon

compensation was a semi-monthly rate of $4,170.

23.      In part III. D. of the Emp. Agmt., Perez also committed to safeguard Square One's

Confidential Information, and to not disclose Confidential Information to any person or entity.

*See* Exhibit 2.

24.      In parts III. E. and F. of the Emp. Agmt., Perez assigned ownership of all his work

product to Square One. *See* Exhibit 2.

25.     In part III. H. of the Emp. Agmt., Perez agreed that he had no right to transfer or retain any information, files, data, and/or e-mails from Square One's e-mail, Google drive, databases, and/or other server accounts. *See* Exhibit 2.

26.     At no point did Perez disclose to Square One that he was not, in fact, doing the work he agreed to do in the Emp. Agmt. Instead, Perez secretly sent that work to one or more third parties to perform.

27.     Square One later learned that after the Emp. Agmt. became effective on May 1, 2022, Perez continued his separate, secret agreement with Molina which Perez did not disclose to Square One. Molina agreed to do all the services Perez had promised Square One he would do under the Agreement. In exchange, Perez agreed to pay Molina $8 an hour, significantly less than the semi-monthly rate of $4,170 Square One had agreed to pay Perez in the Emp. Agmt.

28.     Perez deliberately and repeatedly disclosed Confidential Information to Molina and, on information and belief, other third parties, without informing or obtaining permission from Square One. Perez communicated with Molina several times a day regarding the project and gave Molina the sign in credentials which Square One had given Perez. Molina therefore accessed Confidential Information on a daily basis using sign in credentials Perez was not authorized to give him.

29.     In accordance with the Agreements, and based on false time reports submitted by Perez, Square One paid Perez $1,600 in March of 2022, $5,200 in April of 2022, $8,340 in May of 2022, $8,340 in June of 2022, and $8,340 in July of 2022. In addition, Square One paid Perez $765 for him to be trained by Nextware in April of 2022 and $1,332 to be trained by Nextware in

May of 2022. Training Perez was a waste of money since he was not doing the work, but he still did not disclose that fact to Square One. However, since it did not realize Perez was not doing the work, Square One at all times fulfilled its contractual obligations under the Agreements.

30.     Due to the fact that Perez was not doing the work and did not disclose that he was not doing the work, the work was not accomplished in a timely manner. Square One repeatedly communicated with Perez about his failure to accomplish the work in a timely manner. Perez never disclosed that he was not doing the work, but continued to represent that he and only he was doing the work. Because the work was not done, Square One was forced to retain Nextware and pay it monthly fees of $4,000 for April 15-30, 2022 and $7,500 for May 1-14, 2022.

31.     Thus, the total cost to Square One was $45,417.

32.     After Square One ended its contract with Nextware and gave Perez sole responsibility for the software, it experienced many significant problems. Square One's entire library of resources became inaccessible on June 7, 2022. The company was at a standstill for more than 24 hours, and even when the system finally became accessible it was slow and there were errors. Links sent to clients didn't work. They weren't getting the access to the system that they needed.

33.     On July 12, 2022, Perez said he was still trying to get to know the system. Before he was hired Perez had said it would take him 2-3 weeks to get to know the system, but after 16 weeks he still didn't know the system. Of course that's because he wasn't working on the system at all, and any attempt to train him on the system was wasted on the wrong person. But Perez did not reveal any of this to Square One and still claimed to be doing the work himself.

34.     Furthermore, as stated in part IV. E. of the Ind. Con. Agreement, Perez acknowledged that monetary damages were inadequate to compensate Square One for his repeated and secret disclosure of Confidential Information to Molina and, on information and belief, to undisclosed third parties without Square One's knowledge or permission. As the Ind. Con. Agmt. states, "should Employee cause a breach of any of the provisions contained within this Agreement, the Company shall be entitled to seek injunctive relief, in addition to any other remedies at law or equity, to enforce such provision." *See* Exhibit 1. As it further states, "breach of any of the provisions of Article III of this Agreement will entitle the Company to liquidated damages of no less than $10,000 per incident." *See* Exhibit 1.

35.     Also, as stated in part IV. B. of the Emp. Agmt., Perez acknowledged that monetary damages might be inadequate to compensate Square One for his repeated and secret disclosure of Confidential Information to Molina and, on information and belief, to undisclosed third parties without Square One's knowledge or permission. As the Emp. Agmt. states, "should Employee cause a breach of any of the provisions contained within this Agreement, the Company shall be entitled to seek injunctive relief, in addition to any other remedies at law or equity, to enforce such provision." *See* Exhibit 2.

36.     On August 8, 2022, Molina contacted Square One and disclosed that he, not Perez, had been doing all the work required by the Agreement. That same day Square One terminated Perez's employment.

37.     Between March 22, 2022 and August 8, 2022, or for 139 days, Perez repeatedly disclosed Confidential Information to Molina and, on information and belief, to unidentified

third parties. Pursuant to the Ind. Con. Agmt., just one disclosure per day would justify liquidated damages of $1,390,000. Pursuant to the Ind. Con. Agmt., such disclosures also justify injunctive relief.

38.     Perez's disclosures of Confidential Information to Molina also justify injunctive relief pursuant to the Emp. Agmt.

39.     Perez has refused repeated demands by Square One to disclose the names and contact information of all third parties to whom he disclosed Confidential Information.

## COUNT I: BREACH OF CONTRACT

40.     Square One incorporates by reference paragraphs 1-39 as though fully set forth herein.

41.     The Parties, for valuable consideration, entered into a valid and enforceable contract on March 21, 2022 for the performance of services by Perez as an independent contractor starting on March 21, 2022 in return for money payments by Square One.

42.     Square One performed its contractual obligations under the Ind. Con. Agmt. by paying Perez on an hourly basis for work he claimed to perform, and in addition paying for Perez to be trained by Nextware.

43.     Perez, however, lied about performing work as he had agreed to do in the Ind. Con. Agmt. In fact he performed no work.

44.     The Parties, for valuable consideration, entered into a valid and enforceable contract on March 21, 2022 for the performance of services by Perez as an employee starting on May 1, 2022, in return for money payments by Square One.

45.     Square One performed its contractual obligations by paying Perez on a semi-monthly basis for work he claimed to perform, and in addition paying for Perez to be trained by Nextware.

46.     Perez, however, lied about performing work as he had agreed to do under the Emp. Agmt. In fact he performed no work.

47.     As a result of Square One's reliance on Perez's statements, Square One suffered damages to its business including but not limited to the money it paid to Perez, the money it paid to Nextware to train Perez, the money it paid to Nextware because Perez did not perform his contractual duties, $10,000 in liquidated damages for each unauthorized disclosure of its Confidential Information, and any other compensatory damages, in an amount to be proven at trial, for which Square One seeks compensatory and liquidated damages with interest thereon. Perez's breach of contract has damaged Square One in an amount exceeding $75,000.

48.     Pursuant to the Agreements, Square One is further entitled to an injunction ordering Perez to disclose the names and contact information of any third parties to whom he disclosed Confidential Information, to return or destroy any of Square One's Confidential Information in his possession or control, and to cease and desist any use or disclosure of Square One's Confidential Information.

## COUNT II: FRAUDULENT INDUCEMENT

49.     Square One incorporates by reference paragraphs 1-39 as though fully set forth herein.

50.     Perez knowingly made false statements of material fact and concealed material facts regarding the terms of the Agreements. For example, Perez affirmatively stated that it would take him at most 2-3 weeks to learn Square One's software system, that he could migrate the technology by mid-April 2022, and that he could then work on improvements and make sure Square One was ready for the admissions season beginning on June 1, 2022. Perez concealed the fact that he had arranged to send the work to an untrained and unidentified third party, along with unauthorized access to Square One's Confidential Information.

51.     At the time Perez made these statements they were false. He had no intention of learning Square One's software system or making any improvements at all, let alone according to the timeline he promised.

52.     Perez offered these statements as fact, not opinion, with the intent to induce Square One to enter into the Agreements and pay money to him for work he had no intention of doing.

53.     Square One reasonably relied on Perez's statements in signing the Agreements and paying Perez with the belief that he would do the work required by the Agreements and protect Square One's Confidential Information.

54.     Had Square One known of Perez's secret agreement with Molina and, on information and belief, with unidentified third parties, it would not have entered into the Agreements.

55.     Had Square One known that the work required by the Agreements would not be completed and that the work that was done would not be timely or adequate due to the fact that Perez was not doing the work, it would not have entered into the Agreements with Perez.

56.     As a result of Square One's reliance on Perez's statements, Square One suffered damages to its business including but not limited to the money it paid to Perez, the money it paid to Nextware to train Perez, the money it paid to Nextware because Perez did not perform his contractual duties, and any other compensatory damages, in an amount to be proven at trial, for which Square One seeks compensatory and liquidated damages with interest thereon. Perez's fraud has damaged Square One in an amount exceeding $75,000.

57.     Square One is further entitled to an injunction ordering Perez to disclose the names and contact information of any third parties to whom he disclosed Confidential Information, to return or destroy any of Square One's Confidential Information in his possession or control, and to cease and desist any use or disclosure of Square One's Confidential Information.

58.     Square One is further entitled to punitive damages because Perez's conduct evinces a high degree of moral turpitude and demonstrates such wanton dishonesty as to imply criminal indifference to civil obligations.

**PRAYER FOR RELIEF**

WHEREFORE, Square One prays for judgment in its favor and against Perez, as follows:

A.      For injunctive relief enjoining and restraining Perez's unlawful conduct as alleged herein, including but not limited to his use or disclosure of Square One's Confidential Information, as well an injunction ordering Perez to disclose the names and contact information of any third parties to whom he disclosed Confidential Information and to return or destroy any of Square One's Confidential Information in his possession or control.

C.      For general and compensatory damages in an amount to be determined at trial, but no less than $45,417;

D.      For liquidated damages in an amount to be determined at trial, but no less than $1,390,000;

E.      For exemplary and punitive damages in an amount to be determined at trial;

F.      For Square One's costs of suit;

G.      For Square One's reasonable attorneys' fees incurred in this action pursuant to statute;

H.      For pre-judgment interest on all other interest to which Square One is entitled; and

I.      For such other relief as the Court may deem proper.

## JURY DEMAND

Square One demands a trial by jury.

DATED: November 21, 2022

Respectfully submitted

s/ Timothy L. Swabb
Timothy L. Swabb

The Law Offices of Timothy L. Swabb
6207 North Legett Avenue
Chicago, IL  60646
Telephone: (773) 718-5446
Facsimile: (773) 326-0707
Attorneys for Plaintiff Square One Prep, Inc.